UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
CONNOR NEMBACH, TYLER LANNON, and :
ALEXANDER DIPRETA, on behalf of themselves and all :
others similarly situated,                                        :  Case No. 22 Civ. 7507
                                                                              :
                                          Plaintiffs,           :
           - against -                                           :  **CLASS AND COLLECTIVE**
                                                                              :  **ACTION COMPLAINT**
NICKLIANCOS LLC d/b/a COLLEGE H.U.N.K.S.    :
HAULING JUNK & MOVING OF LONG ISLAND,   :
                                                                              :
                                          Defendant.         :
-----------------------------------------------------------------------X

Plaintiffs Zachary Nembach, Tyler Lannon, and Alexander Dipreta, by and through their

attorneys Kessler Matura P.C., complaining of NICKLIANCOS LLC d/b/a College H.U.N.K.S.

Hauling Junk & Moving of Long Island ("Defendant"), allege as follows:

## INTRODUCTION

1.      Plaintiffs worked as Wingmen and Captains (collectively, "Movers") for

Defendant, hauling and moving Defendant's customers' possessions and refuse.

2.      Defendant paid Plaintiffs and their coworkers on a biweekly basis.

3.      As a result, Defendant violated the requirement that manual workers be paid on a

weekly basis in accordance with the New York Labor Law ("NYLL"), Article 6, §§ 190, *et seq.*

4.      Defendant also violated the requirement that employees "be paid on the regular

pay day" under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.  See* 29 C.F.R.

§ 778.106.

5.      Additionally, Defendant failed to pay Plaintiffs, and their coworkers, overtime

wages at the proper rate, inclusive of all hourly rates paid and wages earned, in violation of the

FLSA and NYLL.

6.     Plaintiffs bring the First and Second Causes of Action under FLSA § 216(b) and NYLL § 198, respectively, for liquidated damages and interest, arising from Defendant's violation of the FLSA and NYLL § 191.

7.     Because Plaintiffs and their coworkers are similarly situated and the statute of limitations is continuing to run against all Movers until they file a consent to join in this action, Plaintiffs bring the First Cause of Action as a collective action and seek leave to notify the "Late Payment Collective," defined as follows:

> All employees working in the State of New York for Defendants as Movers, who were employed at any time in the three years prior to the filing of this Complaint.

8.     Because the harm suffered by Plaintiffs and their coworkers was consistent among all Movers employed within the last six years, Plaintiffs bring the Second Cause of Action as a class action and will seek certification under Federal Rule of Civil Procedure 23 ("Rule 23") for "Late Payment Class," defined as follows:

> All employees working in the State of New York for Defendant as Movers, who were paid on a biweekly basis at any time in the six years prior to the filing of this Complaint.

9.     Because Plaintiffs and their coworkers are similarly situated and the statute of limitations is continuing to run against all Movers until they file a consent to join in this action, Plaintiffs bring the Third Cause of Action as a collective action and seek leave to notify the "Overtime Collective," defined as follows:

> All employees working in the State of New York for Defendant as commission-paid employees, who were employed at any time in the three years prior to the filing of this Complaint.

10.    Because the harm suffered by Plaintiffs and their coworkers was consistent among all commissioned-paid employees within the last six years, Plaintiffs bring the Fourth

Cause of Action as a class action and will seek certification under Rule 23 for the "Overtime

Class," defined as follows:

> All employees working in the State of New York for Defendants as commission-paid employees, who were employed at any time in the six years prior to the filing of this Complaint.

11.     Plaintiffs and the other similarly situated movers suffered the same harms

pursuant to company-wide practices that were in effect throughout the relevant period.

12.     Plaintiffs were paid in the same manner as alleged by the plaintiffs in *Hood, et al.

v. NICKLIANCOS LLC d/b/a College H.U.N.K.S. Hauling Junk & Moving of Long Island*, No.

22 Civ. 4918 (E.D.N.Y.).  *See* <u>Compl.</u> (ECF No. 1), *Hood v. NICKLIANCOS LLC*, No. 22 Civ.

4918 (E.D.N.Y. Aug. 19, 2022).

## <u>JURISDICTION & VENUE</u>

13.     Jurisdiction of the Court over this controversy is based upon 28 U.S.C. §§ 1331

and 29 U.S.C. § 216(b).

14.     This action properly lies in the Eastern District of New York, pursuant to 28

U.S.C. § 1391(b)(2), because events giving rise to this action occurred in Suffolk County, New

York.

15.     This Court has jurisdiction over all state law claims brought in this action pursuant

to 28 U.S.C. § 1367(a).

## <u>THE PARTIES</u>

### *Plaintiff Connor Nembach*

16.     Nembach is a resident of Suffolk County, State of New York.

17.     Nembach worked for Defendant from about April 2019 through January 2022.

18.    Throughout his employment, he was an hourly-paid worker, paid on an IRS Form W2.

19.    Throughout his employment, Nembach was employed as Mover.

20.    At all times relevant, Nembach was an "employee" as defined by 29 U.S.C. § 203(e)(1).

21.    At all times relevant, Nembach was an "employee" as defined by NYLL §§ 190(2), 651(5).

22.    Most of Nembach's time as a Mover was spent performing physical labor.  That is, he carried, lifted, and otherwise moved boxes, furniture, home goods, and refuse throughout the customers' homes and in and out of Defendant's trucks.

23.    Nembach's primary duties as a Mover were non-clerical, non-managerial, and not related to sales.

24.    As a result, Nembach was a "manual worker" as per N.Y. Lab. Law § 190(4).

25.    Nembach was entitled to payment of his wages withing seven calendar days after the end of the workweek, as per N.Y. Lab. Law § 191(1)(a).

26.    Throughout his employment, however, Defendant paid Nembach every two weeks.

27.    As a result, his wages in the first week of the two-week payment cycle were late every time he was paid, in violation of the NYLL and FLSA.

28.    That is, he was regularly paid 11 days after the end of the first workweek.

29.    Nembach was entitled to overtime wages based on the calculation of his regular rate, inclusive of all forms of renumeration not excluded by the FLSA.  *See* 29 C.F.R. § 778.109.

This included commissions earned, given that an employee's commissions "are payments for hours worked and must be included in the regular rate."  29 C.F.R. § 778.117.

30.     Throughout his employment with Defendants, Nembach was paid non-discretionary bonuses, commissions, and multiple hourly rates over the course of the workweek.

31.     At all times throughout Nembach's employment, Defendant, however, did not include all wages earned into his regular rate for purposes of determining and paying his overtime wages.

*Plaintiff Tyler Lannon*

32.     Lannon is a Suffolk County resident.

33.     Lannon worked for Defendant as a Mover from about May to August 2019 and then from August 2021 through July 2022.

34.     He was an hourly-paid worker, paid on an IRS Form W2.

35.     At all times relevant, Lannon was an "employee" as defined by 29 U.S.C. § 203(e)(1).

36.     At all times relevant, Lannon was an "employee" as defined by NYLL §§ 190(2), 651(5).

37.     Most of Lannon's time as a Mover was spent performing physical labor.  That is, he carried, lifted, and otherwise moved boxes, furniture, home goods, and refuse throughout the customers' homes and in and out of Defendant's trucks.

38.     Lannon's primary duties as a Mover were non-clerical, non-managerial, and not related to sales.

39.     As a result, Lannon was a "manual worker" as per N.Y. Lab. Law § 190(4).

40.     Lannon was entitled to payment of his wages withing seven calendar days after the end of the workweek, as per N.Y. Lab. Law §191(1)(a).

41.     From the start of his employment through about April 2022, however, Defendant paid Lannon every two weeks.

42.     During this period, Lannon was paid on the same payment cycle as Nembach and other Movers.

43.     As a result, his wages in the first week of the two-week payment cycle were late every time he was paid, in violation of the NYLL and FLSA.

44.     That is, he was regularly paid 11 days after the end of the first workweek.

45.     Nembach was entitled to overtime wages based on the calculation of his regular rate, inclusive of all forms of renumeration not excluded by the FLSA.  *See* 29 C.F.R. § 778.109. This included commissions earned, given that an employee's commissions "are payments for hours worked and must be included in the regular rate."  29 C.F.R. § 778.117.

46.     Throughout his employment with Defendants, Nembach was paid non-discretionary bonuses, commissions, and multiple hourly rates over the course of the workweek.

47.     At all times throughout Nembach's employment, Defendant, however, did not include all wages earned into his regular rate for purposes of determining and paying his overtime wages.

***Plaintiff Alexander Dipreta***

48.     Dipreta is a Suffolk County resident.

49.     Dipreta worked for Defendant as a Mover from about January 2021 through August 2021.

50.     He was an hourly-paid worker, paid on an IRS Form W2.

51.     At all times relevant, Dipreta was an "employee" as defined by NYLL §§ 190(2), 651(5).

52.     Most of Dipreta's time as a Mover was spent performing physical labor.  That is, he carried, lifted, and otherwise moved boxes, furniture, home goods, and refuse throughout the customers' homes and in and out of Defendant's trucks.

53.     Dipreta's primary duties as a Mover were non-clerical, non-managerial, and not related to sales.

54.     As a result, Dipreta was a "manual worker" as per N.Y. Lab. Law § 190(4).

55.     Dipreta was entitled to payment of his wages withing seven calendar days after the end of the workweek, as per N.Y. Lab. Law §191(1)(a).

56.     Throughout his employment, however, Defendant paid Dipreta every two weeks.

57.     Dipreta was paid on the same payment cycle as Nembach and other Movers.

58.     As a result, Dipreta's wages in the first week of the two-week payment cycle were late every time he was paid, in violation of the NYLL.

59.     Throughout his employment with Defendants, Nembach was paid non-discretionary bonuses, commissions, and multiple hourly rates over the course of the workweek.

60.     His commissions earned, however, were not included in his regular rate for purposes of paying him overtime, in violation of the NYLL.

***Defendant Nickliancos LLC d/b/a***
***College H.U.N.K.S. Hauling Junk & Moving of Long Island***

61.     Defendant is  a  domestic limited liability company,  authorized to do business in the State of New York.

62.     Defendant operates as College H.U.N.K.S. Hauling Junk & Moving of Long Island ("College Hunks").

63.     Defendant uses the College Hunks moniker as an independent licensee of CHHJ Franchising LLC.

64.     Defendant is a franchisee of CHHU Franchising LLC.

65.     Defendant is owned by Ted Panebianco ("Panebianco") and Steven Nickels a/k/a Steven Panebianco ("Nickels").

66.     Upon information and belief, Defendant only has two shareholders:  Panebianco and Nickels.

67.     Defendant's primary place of business is 160 Wilbur Place, Bohemia, NY 11716.

68.     Defendant's moving and junk-hauling business that services all of Long Island, Brooklyn, Queens, and Manhattan.

69.     Defendant is among the largest of the College Hunks franchises.

70.     Defendant owns and operates no less than 22 trucks.

71.     Defendant is an "employer" within the meaning of 29 U.S.C. § 203(d).

72.     Defendant is an "employer" within the meaning of N.Y. Lab. Law §§ 190(3), 651(6).

73.     At all relevant times, the activities of Defendant constituted an "enterprise" within the meaning of Section 3(r) & (s) of the FLSA, 29 U.S.C. § 203(r) & (s).

74.     Defendant maintains control, oversight, and direction over its operations and employment practices.

75.     At all times hereinafter mentioned, Defendant employed employees, including Plaintiffs, who regularly engaged in commerce or in the production of goods for commerce or in handling, selling or otherwise working on goods and materials which have moved in or been

produced for commerce within the meaning of Section 3(b), (g), (i) and (j) of the FLSA, 29 U.S.C. § 203(b), (g), (i), (j), (r) & (s).

76.     At all times hereinafter mentioned, Defendant's annual gross volume of business is not less than $500,000 within the meaning of 29 U.S.C. § 203(s)(A)(ii).

## THE FLSA COLLECTIVE ACTION

77.     Plaintiffs seek to proceed as a collective action with regards to the First and Second Causes of Action, pursuant to 29 U.S.C. § 216(b) on behalf of themselves and the Late Payment and Overtime Collectives.

78.     Plaintiffs have expressed their consent to make these claims against Defendant by filing a written consent form, pursuant to 29 U.S.C. § 216(b).  *See* Ex. A (Consents).

79.     At any given time, Defendant keeps 60 to 100 Movers on staff.  These individuals were all paid on a biweekly basis.

80.     As a result, upon information and belief, there are approximately more than 100 current and former similarly situated employees in the Late Payment Collective.

81.     Likewise, at any given time, Defendant employs dozens of non-exempt individuals who are paid commissions and hourly wages, including Movers and other non-Mover employees, who also work overtime.

82.     As a result, upon information and belief, there are approximately more than 50 current and former similarly situated employees in the Overtime Collective.

83.     Plaintiffs represent other employees and are acting on behalf of Defendant's current and former employees' interests as well as their own interests in bringing this action.

84.     The Late Payment and Overtime Collectives (the "FLSA Collectives") are readily identifiable and locatable through the use of Defendants' records.  The FLSA Collectives should

be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).  Unless the Court promptly issues such a notice, the FLSA Collectives, who have been unlawfully deprived of overtime wages in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendants.

## CLASS ACTION ALLEGATIONS

*Late Payment Class*

85.    Plaintiffs bring this action on this action on their behalf and as a class action, pursuant Rule 23(a) and (b), on behalf of the Late Payment Class.

86.    The persons in the Late Payment Class are so numerous that joinder of all members is impracticable.  Although, the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendant.

87.    Upon information and belief, the size of the Late Payment Class exceeds 400.

88.    This case is properly maintainable as a class action under Rule 23(b)(3).  There are questions of law and fact common to the Late Payment Class that predominate over any questions solely affecting individual members of the Late Payment Class, including but not limited to:

    a.  whether Defendant failed to pay timely wages to Plaintiffs and the Late Payment Class in violation of and within the meaning of the N.Y. Lab. Law § 191(1)(a);

    b.  whether Defendant acted in good faith when failing to pay Plaintiffs and the Late Payment Class timely; and

    c.  the nature and extent of class-wide injury and the measure of damages for those injuries.

89.    Plaintiffs will fairly and adequately protect the interests of the Late Payment Class and have no interests antagonistic to the class.

90.    Plaintiffs are represented by attorneys who are experienced and competent in both class litigation and employment litigation.

91.     Plaintiffs and the Late Payment Class have been equally affected by Defendant's failure to pay proper wages.  Moreover, members of the Late Payment Class still employed by Defendant may be reluctant to raise individual claims for fear of retaliation.

92.     Defendant acted or refused to act on grounds generally applicable to the Late Payment Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

93.     Plaintiffs' claims are typical of those of the Late Payment Class.  Plaintiffs and the Class were subjected to Defendant's policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay timely wages.

94.     Plaintiffs' job duties and manner of payment are typical of those of the Late Payment Class.

95.     That is, Plaintiffs and the Late Payment Class were manual workers.  They spent over 25% of their working time on physical labor such as: operating tools and machines; carrying, lifting, or otherwise moving products and materials; maintaining machines; and remaining on their feet to complete their duties.

96.     Plaintiffs and the Late Payment Class were paid every other week.

97.     Defendant applied their biweekly payment policy to the Late Payment Class uniformly.

98.     Plaintiffs and the Late Payment Class were uniformly deprived of the time value of their earned wages during periods in which payment was illegally delayed.

99.     Plaintiffs and the Late Payment Class were uniformly deprived of the time value of their earned wages during periods in which payment was illegally delayed.

100.    Defendant, however, benefited from the delayed payments.  That is, among other things, Defendant reduced its administrative costs by paying less frequently than required and use the extra money they were holding onto as they pleased until payroll was cut.

101.    Plaintiffs and the Late Payment Class were denied wages amount to at least the minimum wage times their hours worked for the duration of the illegal delay.

102.    Plaintiffs and the Late Payment Class were denied their federally mandated overtime wages for the duration of the illegal delay.

103.    Defendant was able to pay all minimum wages and overtime wages due on a weekly basis.

104.    Defendant was able to and did pay Plaintiffs and the Late Payment Class all minimum wages and overtime wages due within the statutorily required period as it relates to the second workweek of each pay period, but refused to do so for the first workweek.

105.    Defendant did not possess a good faith basis for deciding to pay and thereafter continuing to pay their employees' wages biweekly.

106.    The State of New York has required certain businesses to pay their manual workers on a weekly basis since the 19th Century.  *See* N.Y. Session Law 1890, Ch. 388 § 1 ("Every manufacturing . . . company shall pay weekly, each and every employee engaged in its business, the wages earned by such employee to within six days of the date of such payment . . . ."); N.Y. Session Law 1897, Ch. 415 §§ 2, 10 ("Every corporation . .  shall pay weekly to each employe [sic] the wages earned by him to a day not more than six days prior to the date of such payment.").

107.    A reasonable employer inquiring into the wage payment rules of New York would know that manual workers are to be paid each week given that, for example, the rules are listed on the Department of Labor's Frequency Asked Quests flyer regarding the Wage Theft Prevention

Act (https://dol.ny.gov/system/files/documents/2021/03/wage-theft-prevention-act-frequently-asked-questions_0.pdf) and many legal, human resource, and employment blogs brought attention to this issue following the First Department's 2019 decision in *Vega v. CM & Assocs. Constr. Mgmt. LLC*, 175 A.D.3d 1144 (1st Dept. 2019).

108.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The Late Payment Class has been damaged and are entitled to recovery as a result of Defendant's common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual members of the Late Payment Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

***Overtime Class***

109.    Plaintiffs bring this action on this action on his behalf and as a class action, pursuant Rule 23(a) and (b), on behalf of the Overtime Class.

110.    The persons in the Overtime Class are so numerous that joinder of all members is impracticable.  Although, the precise number of such persons is unknown, and facts on which the calculation of that number can be based are presently within the sole control of Defendant.

111.    Upon information and belief, the size of the Overtime Class exceeds 100.

112.     This case is properly maintainable as a class action under Rule 23(b)(3).  There are questions of law and fact common to the Overtime Class that predominate over any questions solely affecting individual members of the Overtime Class, including but not limited to:

    a.  whether Defendant failed to pay overtime wages to the Plaintiffs and the Overtime Class in violation of and within the meaning of the N.Y. Lab. Law § 191(1)(a);

    b.  whether Defendant acted in good faith when failing to pay the Plaintiffs and the Overtime Class at the proper overtime rate;

    c.  whether Defendant acted willfully when failing to pay the Plaintiffs and the Overtime Class at the proper overtime rate;

    d.  the nature and extent of class-wide injury and the measure of damages for those injuries.

113.     Plaintiffs will fairly and adequately protect the interests of the Overtime Class and has no interests antagonistic to the class.

114.     Plaintiffs are represented by attorneys who are experienced and competent in both class litigation and employment litigation.

115.     Plaintiffs and the Overtime Class have been equally affected by Defendant's failure to pay proper overtime wages.  Moreover, members of the Overtime Class still employed by Defendant may be reluctant to raise individual claims for fear of retaliation.

116.     Defendant acted or refused to act on grounds generally applicable to the Overtime Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

117.     Th Plaintiffs' claims are typical of those of the Overtime Class.  Plaintiffs and the Class were subjected to Defendant's policies, practices, programs, procedures, protocols and plans alleged herein concerning the failure to pay overtime wages.

118.    Plaintiffs' job duties and manner of payment are typical of those of the Overtime Class.

119.    Plaintiffs and the Overtime Class were paid overtime wages that were not inclusive of all renumeration earned not excluded from the regular rate.

120.    Defendant applied this unlawful payment policy to the Overtime Class uniformly.

121.    Defendant did not possess a good faith basis for deciding to pay and thereafter continuing to pay their employees' overtime wages that excluded all renumeration earned.

122.    Employers have been required to pay overtime based on a regular rate of pay that is inclusive of all applicable remuneration, including incentive payments – such as, commissions, and bonuses – and multiple wage rates for decades.  *See, e.g.*, *Walling v. Youngerman-Reynolds Hardwood Co*., 325 U.S. 419, 424 (1945) ("The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. It is not an arbitrary label chosen by the parties; it is an actual fact."); *Brennan v. Lauderdale Yacht Basin, Inc*., 493 F.2d 188, 191 (5th Cir. 1974); 33 Fed. Reg. 989-990 (Jan. 26, 1968).

123.    A reasonable employer inquiring into the overtime payment rules of employees paid multiple forms of renumeration would determine that their overtime must be inclusive of all applicable renumeration, given that guidance, such as Fact Sheet #56(A) from the U.S. Department of Labor, is easily accessible through a Google search.

124.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation – particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant.  The Overtime Class has been damaged and are entitled

to recovery as a result of Defendant's common and uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the Overtime Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

### FIRST CAUSE OF ACTION
**FLSA – Failure to Pay Timely Wages**
**(On behalf of Plaintiffs and the Late Payment Collective)**

125.    Plaintiffs incorporates by reference all preceding allegations.

126.    Plaintiffs and the Late Payment Collective members are employees entitled to be paid overtime wages as soon as practicable after the workweek ends.  *See* 29 C.F.R. § 778.207.

127.    Plaintiffs and the Late Payment Collective members are employees entitled to on-time payment of their statutory minimum wages after the workweek ends.  *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945).

128.    Defendant employed Plaintiffs and the Late Payment Collective members for workweeks in which Plaintiff and the Late Payment Collective members worked over 40 hours, entitling them to overtime wages under the FLSA.

129.    Defendant, however, withheld Plaintiffs and the Late Payment Collective members federally mandated wages for eight or more days after the conclusion of the workweek.

130.    This delay was pursuant to a companywide policy and practice to pay Defendants' employees on a biweekly basis.

131.    Such a delay is inherently unreasonable, as Defendant was required by New York law to pay Plaintiffs and the Late Payment Collective members within seven days after the end of the workweek.

132. Defendant failed to make a good faith effort to comply with the FLSA with respect to compensating Plaintiffs and the Late Payment Collective members.

133. Defendant had the means to pay Plaintiffs and the Late Payment Collective members within one week of the end of the workweek but chose not to.

134. Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

135. As a consequence of the willful delayed of wages, alleged above, Plaintiffs and the Late Payment Collective incurred damages and seek to recover interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### FLSA – Failure to Pay Overtime Wages
### (On behalf of Plaintiffs and the Overtime Collective)

136. Plaintiffs incorporates by reference all preceding allegations.

137. Plaintiffs and members of the Overtime Collective are non-exempt employees.

138. Defendant employed Plaintiffs and FLSA Collective for workweeks in which he and Overtime Collective worked over 40 hours, entitling them to overtime wages under the FLSA.

139. Defendant failed to pay Plaintiffs and the Overtime Collective for at the proper overtime rate.

140. Defendant failed to make a good faith effort to comply with the FLSA with respect to compensating Plaintiffs and the Overtime Collective.

141. Because Defendant's violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

142. As a consequence of the willful underpayment of wages, alleged above, Plaintiffs and members of the Overtime Collective incurred damages thereby and Defendant is indebted to

them in the amount of the unpaid overtime wages, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
### NYLL – Untimely Payment of Wages
### (On behalf of Plaintiffs and the Late Payment Class)

143.    Plaintiffs incorporate by reference all preceding allegations.

144.    Defendant failed to pay Plaintiffs and the Class on a weekly basis as required by N.Y. Lab. Law § 191(1)(a).

145.    Defendant has not employed over 1,000 individuals in the State of New York for one or more consecutives years.

146.    Defendant has not received authorization under N.Y. Lab. Law § 191(1)(a)(ii) from the Commissioner of Labor to pay its employees less frequently than once per week.

147.    Defendant does not possess a good faith basis for believing that its delayed payment of wages complied with the law.

148.    Due to Defendant's violations of N.Y. Lab. Law § 191(1)(a), Plaintiffs and the Class owed liquidated damages amounting to the value of any late-paid wages during the six years prior to the filing of this complaint, interest, and reasonable attorneys' fees and costs as provided for by N.Y. Lab. Law § 198.

## FOURTH CAUSE OF ACTION
### NYLL – Failure to Pay Overtime Wages
### (On behalf of Plaintiffs and the Overtime Class)

149.    Plaintiffs incorporate by reference all preceding allegations.

150.    Defendant failed to pay Plaintiffs and the Overtime Class at a rate of less than one and one-half time their regular rate for all hours worked.

151.    By the course of conduct set forth above, Defendant violated NYLL § 650, *et seq.*; 12 N.Y.C.R.R. § 142-2.2.

152.    Defendants' failure to pay all overtime compensation due to Plaintiffs and the Overtime Class was willful or otherwise lacked sufficient good faith within the meaning of NYLL § 663.

153.    As a consequence of the willful underpayment of wages, alleged above, Plaintiffs and the Overtime Class incurred damages thereby and Defendant is indebted to them in the amount of the unpaid wages and such other legal and equitable relief due to Defendant's unlawful and willful conduct, as the Court deems just and proper.

154.    Plaintiffs further seek the recovery liquidated damages, attorneys' fees, and costs to be paid by Defendant as provided by the NYLL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests the following relief:

A.    Leave to give notice to the FLSA Collectives that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.    Certification of this case as a Class Action under Rule 23;

C.    Appointment of Plaintiffs as Class Representatives;

D.    Appointment of Kessler Matura P.C. as Class Counsel;

E.    Unpaid overtime wages under the FLSA and NYLL;

F.    Liquidated damages;

G.    Attorney's fees and costs of the action;

H.    Pre-judgment interest and post-judgment interest as provided by law;

I.    A declaratory judgment that the practices complained of are unlawful; and

J.    Such other injunctive and equitable relief as this Court shall deem just and proper.

Dated: Melville, New York
        December 11, 2022

Respectfully submitted,

By: _____

       Garrett Kaske

**KESSLER MATURA P.C.**
Troy L. Kessler
Garrett Kaske
534 Broadhollow Road, Suite 275
Melville, NY 11747
Phone: (631) 499-9100
Fax: (631) 499-9120
tkessler@kesslermatura.com
gkaske@kesslermatura.com

***Attorneys for Plaintiffs and***
***the Putative Collective and Class Actions***

# **<u>Exhibit A</u>**

| **CONSENT TO BECOME A PARTY-PLAINTIFF** |
|---|

1. I consent to be a party plaintiff in a lawsuit against my current/former employer, NICKLIANCOS LLC d/b/a College H.U.N.K.S. Hauling Junk & Moving of Long Island ("College Hunks") and/or any related entities, for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and any applicable state law.

2. During the past three years, there were occasions when College Hunks did not pay me as required by the Fair Labor Standards Act.

3. I designate Kessler Matura P.C. to represent me and make decisions on my behalf concerning the litigation, including any settlement.  I agree to be bound by any adjudication, whether it is favorable or unfavorable.

4. I also consent to join any separate or subsequent action to assert my claims against College Hunks and/or any related entities potentially liable.


Date: __12 / 08 / 2022__

_____
Signature

Alexander Dipreta
_____
Print Name

## CONSENT TO BECOME A PARTY-PLAINTIFF

1. I consent to be a party plaintiff in a lawsuit against my current/former employer, NICKLIANCOS LLC d/b/a College H.U.N.K.S. Hauling Junk & Moving of Long Island ("College Hunks") and/or any related entities, for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and any applicable state law.

2. During the past three years, there were occasions when College Hunks did not pay me as required by the Fair Labor Standards Act.

3. I designate Kessler Matura P.C. to represent me and make decisions on my behalf concerning the litigation, including any settlement.  I agree to be bound by any adjudication, whether it is favorable or unfavorable.

4. I also consent to join any separate or subsequent action to assert my claims against College Hunks and/or any related entities potentially liable.

Date: 12 / 07 / 2022

_Tyler Lannon_
Signature

Tyler Lannon
Print Name

## CONSENT TO BECOME A PARTY-PLAINTIFF

1. I consent to be a party plaintiff in a lawsuit against my current/former employer, NICKLIANCOS LLC d/b/a College H.U.N.K.S. Hauling Junk & Moving of Long Island ("College Hunks") and/or any related entities, for alleged violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and any applicable state law.

2. During the past three years, there were occasions when College Hunks did not pay me as required by the Fair Labor Standards Act.

3. I designate Kessler Matura P.C. to represent me and make decisions on my behalf concerning the litigation, including any settlement. I agree to be bound by any adjudication, whether it is favorable or unfavorable.

4. I also consent to join any separate or subsequent action to assert my claims against College Hunks and/or any related entities potentially liable.

Date: __12 / 10 / 2022__

_____
Signature

Connor Nembach
_____
Print Name